## WINCHESTER REPEATING ARMS CO. v. AMERICAN BUCKLE & CARTRIDGE CO.

(Circuit Court, D. Connecticut.  November 6, 1893.)

### No. 677.

Opinion Granting Rehearing.

In Equity.  This was a suit by the Winchester Repeating Arms Company against the American Buckle & Cartridge Company.  It was tried together with two other cases between the same parties, (Nos. 676 and 678,) and a decree was entered awarding an injunction.  See 54 Fed. Rep. 703.  Rehearing granted as to the third claim, with liberty to introduce the file wrapper in evidence.

Charles R. Ingersoll and George D. Seymour, for plaintiff.

Henry G. Newton, for defendant.

SHIPMAN, Circuit Judge.  This is a motion for a rehearing of No. 677, the bill in equity between the parties which is founded upon the alleged infringement of the third and fourth claims of letters patent No. 232,907, dated October 5, 1880, to George P. Salisbury, for an improved cartridge assembling machine, and also for leave to introduce in evidence the "file wrapper and contents" of said patent.  It is thought that the history of the patent upon its way through the patent office furnishes light upon the proper construction of the claims in controversy.  Objection to the opening of the case so far as to permit the file wrapper and contents to become a part of the testimony is not substantially made, as the complainant is of opinion that its theory of the patent is sustained by the patent office record.  For the purpose of presenting the facts in a compact form, it is necessary to restate those which were given in the previous opinion, (54 Fed. Rep. 703,) as follows:

"The patentee says in the specification of the 'assembling machine' patent: 'Paper cartridge shells, such as are ordinarily used in shotguns, are composed usually of four parts, viz.: An open-ended tube, which constitutes the body of the shell; second, a short tube, called a "reinforce;" third, a wad to close the ends; and, fourth, a metallic cap or head. Heretofore these parts have been put together, or, as it is technically termed, "assembled," by hand, which is necessarily a slow and tedious process. The object of my present invention is to produce a machine by which this work may be done automatically by simply applying it with the parts before mentioned. The machine may be of various forms or styles, but the style shown in the accompanying drawings is one of the simplest and most convenient known to me.'"

The mode of operation of the parts of the machine which are included in claims 3 and 4 is as follows:

" 'Tubes, each with a wad in one end, are stuck by hand, wad end up, on vertically arranged pins carried by an intermittently rotated horizontal dial, which presents them to the action of crimpers, whereby their upper ends are contracted, and cups or heads are thrown open side up, on a horizontal friction-feed dial, which co-operates with a fixed guide or channel located just above it, to feed them in single file onto a bed or table, from which they are picked up one by one by a pair of oscillating, spring fingers, which swing them over the contracted ends of the tubes, when a punch comes down, and drives them thereupon, the tubes or shells being then automatically picked off the pins and discharged from the machine.' 

"The third and fourth claims are as follows:

" 'The crimping tools, f and g, arranged to operate consecutively on the shell or tube, b, to prepare it for the reception of the metal head, in combination with mechanism, substantially such as described, for delivering and forcing the metal head upon the shell, as set forth. (4) The combination of a shell-carrying dial, D, a friction feed dial, L, with the spring transfer jaws, m, and reciprocating punch, h, for feeding, placing, and forcing the metal head on the shell, substantially as described.' "

The defendant's crimper was single, and in construction was substantially the same, and in operation was the same, with the double crimper of the Salisbury machine. It was a reciprocating spindle, with a conical cavity, which was forced down upon the end of the tube, and crimped that end. The two Salisbury crimpers are constructed and operated consecutively in the same way. The difference is in the number of thimbles which are forced upon the end of the tube. Single crimpers to prepare the shell for the receipt of the metal head were old when the Salisbury automatic machine was invented. No invention existed in the substitution of two crimpers for one; although two can probably do the work more neatly and accurately, one crimper could, without invention, be made to operate upon the end of the tube twice instead of once before the "heading" operation, or two could act consecutively. The actual invention of the third claim consisted not in the double crimper, but in the combination of a tool or tools for crimping the tube with mechanisms for delivering and forcing the metal head upon the tube, the continuous operations being accomplished automatically.

Under this state of facts it is important to ascertain from the history of the patent whether the patentee so tied himself to a double crimper, the tools acting, as a matter of course, consecutively, that he limited the third claim to that construction. The claim, as originally presented, was as follows:

"(4) In combination with the shell carrying dial, D, the reciprocating crimping tools, f and g, arranged to operate substantially as described."

The patent office rejected the claim, saying:

"The use of two crimping devices of substantially the same combination for successively operating upon the shells to effect the proper degree of compression involves no novelty in view of Smoot & Hamilton, (196,545, Oct. 30, 1877.)"

The machine here referred to had vertical reciprocating dies or crimpers, which acted upon the head but once. The patentee

amended his claim in the manner in which it was allowed, saying, with reference to all his amendments:

"The invention in this case does not consist in new devices, but in the combination of old devices in such a manner as to produce new results; in other words, it is a new organization of mechanical devices by which work that has heretofore been performed by hand is now performed by machinery automatically."

He therefore increased the number of elements of the combination so as to make it include not merely an automatic crimper and a carrying dial, but also mechanism for the automatic delivering of the heads and the automatic forcing of the heads upon the shells. But he also added to the claim language which was apparently intended to differentiate his crimping mechanism from pre-existing crimpers by the fact that his devices were arranged to operate consecutively on the tube. It is true that the patent office had said that mechanisms for successively operating upon the shells involved no novelty, yet the patentee changed the language of this claim with the apparent object of making a point of this supposed peculiarity in the method of operation. From this history it appears that the question of infringement does not depend in this case upon the mechanical equivalency of the element which was substituted for the omitted part of the combination, (Meter Co. v. Desper, 101 U. S. 332,) but it depends upon the construction of the claim, and whether the patentee has limited his invention, by the terms which he has selected, to crimpers which operated consecutively, (McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. Rep. 76,) Upon this contention I think that the defendant is correct.

It is also insisted that the fourth claim was not infringed, because the defendant's machines did not contain the friction dial, L. The claim, as originally presented, was for "the combination in an assembling machine of a shell carrying dial, D, and a friction dial, L', with the spring transfer jaws, m, m, and reciprocating punch, h, all arranged to operate substantially as described for placing the metal heads upon the shells, as set forth." The claim was rejected, upon the ground that the particular combination named had been anticipated; whereupon it was amended so as to claim the automatic character of the combination to feed, place, and force the metal head upon the shell. The defendant urges that the friction dial, L, was substituted for L'. By mistake, apparently, the prime mark was omitted, for the dial, L, has no co-operative connection with the spring fingers, and has also no relation to the heads, which are the principal subject of the mechanism of the fourth claim, but its co-operative connection is with the devices which take hold of the reinforces and the wads. This clerical error is easily understood by reference to the specification. The proper construction of the claim is to regard the dial, L, as the one with which the fingers are connected, and which is called L' in the drawings and specification. As thus construed, it was infringed, and a rehearing thereon is unnecessary.

The motion for a rehearing upon the third claim, and for liberty to introduce the file wrapper and contents in evidence, is granted.